UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 09-292 (JMR/SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | THE DEFENDANT'S VARIOUS |
| Plaintiff, | ) | PRETRIAL MOTIONS |
| | ) | |
| v. | ) | |
| | ) | |
| ABDOW MUNYE ABDOW, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys B. Todd Jones, United States Attorney for the District of Minnesota, W. Anders Folk, Assistant United States Attorney, Jeffrey D. Groharing and William M. Narus, Trial Attorneys with the U.S. Department of Justice, hereby submits the Government's Omnibus Response to the various pretrial motions filed by the Defendant, Abdow Munye Abdow.

## BACKGROUND

On October 5, 2009, the Defendant and four other men rented a car and drove from Minnesota and to Southern California. En route, at approximately 9:17 PM on October 6, 2009, the men were stopped by Nevada State Troopers Neil Ferguson and Gary Smith for exceeding the posted speed limit outside of Las Vegas. After stopping the vehicle in which the Defendant was riding, Trooper Ferguson obtained the driver's license and rental car information from the driver as well as identification from two passengers in the vehicle. Trooper Ferguson then asked the driver to step out of the

vehicle.  Ferguson then handed the identification documents to his partner, Trooper Smith, to run routine records checks.  While Trooper Smith checked the identification documents, Trooper Ferguson asked the driver where he was going.  The driver told Ferguson that he was going to a wedding in San Diego, California, but was unable to tell Trooper Ferguson where the wedding was being held or where he was staying.  Trooper Ferguson also asked the other passengers where they were going.  The other occupants provided Ferguson with conflicting stories about how they knew one another.

Trooper Ferguson then learned from Smith that during the course of the records check, the driver's name was on a Federal Bureau of Investigation ("FBI") watch-list.  This information provided a number for the troopers to call, which they did.  After calling the number and discussing the fact that the driver had been pulled over outside of Las Vegas, Trooper Ferguson gave the driver his identification documents back and the driver returned to the car.   On October 8, 2009, FBI agents approached the Defendant at his job and requested an opportunity to interview him.  At no time before, during or after the interview did the agents place Abdow under arrest.  Rather, the agents informed Abdow that he was not in any trouble.  Abdow told the agents that he rented the car after a fight with his wife and left Minnesota for Las Vegas with his friend "Adam."  Abdow told agents that he and Adam rented a car

2

and drove to Las Vegas because they "wanted to see it." Abdow said that they did not have any problems along the way, did not stop anywhere, and did not encounter anyone else during the drive. Abdow told the agents that they immediately turned around and returned to Minnesota after arriving in Las Vegas. Abdow was asked a second time if he had any passengers in his rental car. Abdow told the agents that no one else was in his rental car besides Adam.

The agents explained to the Defendant that it is a crime to make false statements to federal law enforcement agents. He was then asked a third time if there were any people in the rental car with him. Although initially stating that he did not want to mention any names, the Defendant then said there were three additional individuals in the rental car. The Defendant identified the three individuals by nicknames, "Farhan," "Adaki," and "Farah," and said that he did not know their real names.

At that point, The Defendant said, "I am talking too much," and attempted to retract his prior statements. The Defendant said that he did not know anything. He denied that there were five people in the car, saying that there could have been two or four individuals in the car. The Defendant said that he did not know who paid for the rental car, that he did nothing wrong, and that "whatever those guys are into, I'm not." Agents asked the Defendant several more times who was with him in the car, and he

3

responded each time by saying, "I don't know."

The Defendant was asked if Adaki, Farhan, and Farah were in the car with him and he responded, "I don't know."  He was then asked if he went to Las Vegas, to which he again responded, "I don't know."  After additional questions, agents asked the Defendant if he wanted to continue speaking, and he replied he did not know.  The agents offered to speak with him when he finished work, and he said he would "take his chances," at which point the interview ended.

On October 9, 2009, special agents from the Federal Bureau of Investigation ("FBI") arrested the defendant on a one-count complaint which charged him with making false statements to the FBI.  On October 13, 2009, a federal grand jury indicted the Defendant on two counts of making false statements in violation of 18 U.S.C. § 1001 (a)(2).

The defendant has filed ten motions.

1.    **Motion for Disclosure of 404(b) Evidence**.

The Defendant has moved for the disclosure of any prior "bad act" or "similar course of conduct" evidence which the United States intends to offer at trial.  He has also asked the Court to direct the United States to identify the witnesses through whom such evidence will be presented.

The United States is fully aware of its obligations under Rule 404(b) and intends on fully complying with those obligations.  The

4

issues before the Court on this matter are (1) when disclosures under Rule 404(b) must be made and (2) whether the United States is required to identify the witnesses through whom such evidence will be presented at trial.  Each of these issues is addressed in turn.

With respect to the request for disclosure of all 404(b) evidence, Rule 404(b) does not require the immediate disclosure of such evidence.  Although the United States intends to produce all such evidence as soon as practicable, the United States objects to the timing element of this request because it will lead to motions to exclude later discovered 404(b) evidence.  The United States recommends that such disclosures be ordered to be made no later than **fourteen days** before trial.

The United States objects to the defendant's request for the United States to identify the witnesses through whom any 404(b) evidence will be presented.  During pretrial discovery, the United States is not required to disclose directly or indirectly the names and addresses of its witnesses under either Federal Rule of Evidence 404(b) or under Federal Rule of Criminal Procedure 16. See Arcoren v. United States, 929 F.2d 1235, 1242 (8th Cir. 1991); Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments. Thus, this portion of the Defendant's motion should be denied.

Finally, the United States requests that the order be strictly drawn to require no more than what is encompassed by Rule 404(b). Specifically, Rule 404(b) does not encompass acts which are

"intrinsic" to the charged offense. Fed. R. Evid. 404 advisory committee's notes, 1991 Amendments. If conduct of the defendant is an "intrinsic" part of any of the charged offense but could otherwise be considered a "bad act," then Rule 404(b) does not contemplate that notice of such evidence be given. The distinction is an important one as the defendant may claim that the United States must give notice of every "bad act" it intends to introduce, which is not so. United States v. Adedrian, 26 F.3d 61 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence).

2. **Motion for Discovery and Inspection**.

The United States has already complied with Rule 16(a)(1)(A)-(F) and 16(c) and has even made discovery not required by law. Further, the government understands its continuing obligations with respect to discovery and will continue to provide discovery to defendants as it becomes available.

3. **Motion for Discovery of Expert under Rule 16(a)(1)(E)**.

The United States respectfully requests that the Court order that all Rule 16(a)(1)(G) disclosures be made no later than fourteen days before trial. See United States v. Finn, 919 F. Supp. 1305, 1316 n.7 (D. Minn. 1995) (ordering government to make Rule 16(a)(1)(E) disclosures as opinions become available and no later than seven days before trial and rejecting defendant's request that such disclosures be made at least 45 days prior to

6

trial).  Such a timing requirement allows the parties sufficient notice of the expected testimony and time to prepare a focused cross-examination of the expert.  See Fed. R. Crim. P. 16 advisory committee's note, 1993 Amendments.

4.   **Motion for Early Disclosure of Jencks Act Material**.

The United States objects to this motion.  It has been repeatedly and consistently held in this Circuit and District that the United States may not be required to make pretrial disclosure of Jencks material.  Finn v. United States, 919 F. Supp. 1305, 1315 (D. Minn. 1995); see also United States v. Ben M. Hogan Co., 769 F.2d 1293, 1300 (8th Cir. 1985); United States v. White, 750 F.2d 726 (8th Cir. 1984).  Accordingly, the United States objects to any court-ordered disclosure of such statements prior to the witnesses' testimony.   The United States presently intends to disclose prior statements of its witnesses three **calendar** days before trial provided that the defendant provides reciprocal Jencks Act disclosures at the same time.

5.   **Motion for Government Agents to Retain Rough Notes**.

The United States does not object to requiring the law enforcement officials involved in the investigation of this case to retain and preserve their rough notes.  However, the United States objects to any order concerning the disclosure of rough notes. Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500.  United States v. Redding, 16 F.3d

298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted or approved of notes); <u>United States v. Shyres</u>, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover government agents' general notes from witness interviews). Nor are agent rough notes generally discoverable as "statements" of the agent. See <u>United States v. Simtab</u>, 901 F.2d 799, 808-09 (9th Cir. 1990) (defendant not entitled to discover testifying agents' destroyed rough notes of investigations because Jencks Act material when merely represented pieces of information put in writing to refresh memory); <u>United States v. Williams</u>, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes, contact sheets, witness lists, summaries of non-testifying witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

6.   **Motion for Government to Provide Grand Jury Testimony of any Witness who will Testify at Suppression Hearing.**

The Government does not intend to call any witnesses who testified at the Grand Jury, as such, this motion should be denied as moot.

7.   **Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant**.

The United States is aware of its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and their progeny. The United States has complied, and

will continue to comply, with <u>Brady</u>, <u>Giglio</u>, and their progeny. The United States objects to the Defendant's motion to the extent that it goes beyond the requirements of <u>Brady</u>, <u>Giglio</u>, and their progeny.

8.   **Motion to Suppress Government Interception of Wire or Oral Communication**.

The Defendant in this case was not intercepted using any form of electronic surveillance or wiretaps in connection with the crimes alleged in the indictment.  Thus, this issue is moot and the Defendant's motion should be denied.

9.   **Motion to Suppress Statements**.

As an initial matter, the Defendant's cursory and vague motion to suppress statements fails to set forth a sufficient factual predicate for relief, and the request for an evidentiary hearing on this issue should therefore be denied.  The law is clear that such an unsubstantiated motion does not require an evidentiary hearing:

> Evidentiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required.

<u>United States v. Losing</u>, 539 F.2d 1174, 1178 (8th Cir. 1976) (assessing propriety of evidentiary hearing as to wiretap) (quoting <u>United States v. Ledesma</u>, 499 F.2d 36, 39 (9th Cir. 1974)). In general, the defendant has the burden of production to show that evidence should be suppressed because it was illegally obtained.

9

See <u>Carter v. United States</u>, 729 F.2d 935, 940 (8th Cir. 1984). Indeed, the government's burden of persuasion does not arise until a defendant makes specific factual allegations. See <u>United States v. De La Fuente</u>, 548 F.2d 528, 533-34 (5th Cir. 1977). Defendant's motion to suppress his statements fails to sufficiently specify the specific legal and factual grounds for his motion. As such, the United States should not be required to respond. See <u>Losing</u>, 539 F.2d at 1177-79 (an evidentiary hearing is not required to resolve contentions that are "conclusory in nature"); <u>United States v. Voigt</u>, 89 F.3d 1050, 1067 (3d Cir. 1996) ("In order to be 'colorable,' a defendant's motion must consist of more than mere bald-faced allegations of misconduct."); <u>United States v. Walker</u>, 879 F. Supp. 1087 (D. Kan. 1995) (no evidentiary hearing as to Fourth Amendment claim unless defendant makes adequate "showing by alleging 'facts that, if proven, would entitle him to relief'") (quoting <u>United States v. Lewis</u>, 40 F.3d 1325, 1332 (1st Cir. 1994)); <u>United States v. Infelise</u>, 773 F. Supp. 93, 97 (N.D. Ill. 1991)("No hearing is necessary...because the defendant has offered only innuendo and speculation, without any supporting evidence that these issues really exist.").

The Defendant has moved the Court to suppress any statements alleged to have been made by the Defendant "based on the indictment, the records and files in the above-entitled action[.]" (Dkt. at 38.) The Government is aware of no grounds on which any

10

of the Defendant's statements should be suppressed.  As a result, the United States respectfully requests that the Defendant's motion to suppress Abdow's statements be denied because the Defendant has failed to show sufficiently definite, specific, detailed, and non-conjectural grounds to support suppression of the Defendant's statements.

10.   **Defendants' Motion to Suppress Evidence from Traffic Stop.**

The Nevada State Troopers effected a constitutional stop of the Defendant's vehicle, properly expanded the scope of the stop and all evidence obtained as a result of the stop is admissible against the Defendant.

A.   Nevada State Troopers Had Reasonable Suspicion for the Traffic Stop.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  A traffic stop or investigatory detention qualifies as a Fourth Amendment seizure.  United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)).  An investigatory detention is a narrow exception to the probable cause requirement under the Fourth Amendment.  Terry v. Ohio, 392 U.S. 1, 26-27 (1968); United States v. Stigler, 574 F.3d 1008, 1010 (8th Cir. 2009).  An officer must have a reasonable, articulable suspicion of criminal activity to conduct such an investigatory detention.  Id. at 21-22.

In general, a traffic stop must be supported by a reasonable, articulable suspicion that criminal activity has occurred or is occurring. United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2004). Any traffic violation, however, minor, creates probable cause to stop a vehicle. United States v. Binion, 570 F.3d 1034, 1038 (8th Cir. 2009); United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009); United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004). Once an officer has probable cause to stop a vehicle, "the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." Arciniega, 569 F.3d at 397 (citing United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996)). Here, the Defendant's vehicle was stopped as a result of the vehicle driving over the 75 M.P.H. speed limit.

During a lawful traffic stop, an officer may check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car. United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (citing United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003)); United States v. $404.905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999). Here, Trooper Ferguson's actions - after stopping the Defendant's vehicle for speeding - requesting the driver's license from the driver, asking the driver to step out of his vehicle and asking the driver questions about his destination and purpose for travel were appropriate.

12

B.     Any Expansion of the Scope of the Stop Was Valid.

When a vehicle is stopped pursuant to Terry, "[t]he officer may ask the detainee questions in order to dispel or confirm his suspicions, but questioning is limited in scope to the circumstances that justified the stop." United States v. Johnson, 54 F.3d 1120, 1124 (8th Cir. 1995) (citing United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990)).   During an investigatory detention, an officer "must ... employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary achieve the purpose" of the stop.  United Stats v. Gill, 513 F.3d 836, 845 (8th Cir. 2008) (quoting United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1990)).   Asking questions and seeking to obtain consent to search a vehicle have been held to constitute reasonable and permissible methods of continuing an investigation that did not unduly prolong an investigation.  Gill, 513 F.3d at 845.   Here, Trooper Ferguson initially asked the driver routine questions about where he traveling and the purpose of his travel.

The scope of a Terry stop,  may be expanded if the officer has reasonable, articulable suspicion that the person is engaged in criminal activity.  United States v. Long, 320 F.3d 795, 800 (8th Cir. 2003).  When the responses of a detainee and the circumstances surrounding those responses give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy

13

those suspicions.  Barragan, 379 F.3d at 529 (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)), overruled on other grounds.  The officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity" in light of all the circumstances from which "a trained officer draws inferences and makes deductions ... that might well elude an untrained person."   United States v. Binion, 570 F.3d 1034, 1039 (8th Cir. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  An officer may also question a vehicle's passengers to verify information provided by the driver.  Barragan, 379 at F.3d at 529 (quoting United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002)).  Conflicting stories between a driver and a passenger may provide justification to expand the scope of the stop and to detain the occupants.  Id. (citing United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003)).  In this case, troopers permissibly expanded the scope of the stop based on a reasonable and articulable suspicion that the occupants of the Defendant's rental car were engaged in criminal activity.

Here, following the initial traffic stop for exceeding the speed limit, the troopers learned that the driver of the vehicle appeared on a terrorism watch-list.  In conjunction with the fact that the driver was in a rental car, there were four other men of no relation, two of the men had no identification, the three with identification were hundreds of miles and several states from their

14

residences in Minnesota, and the occupants gave inconsistent explanations for their trip, the troopers had reasonable suspicion to believe that the driver and passengers may be involved in criminal activity. *Cf.* United States v. Mercado-Nava, 486 F. Supp.2d 1271, 1275 (D. Kan. 2007) (citing the state trooper's awareness that defendant's trucking company was on a DEA watch-list of companies having prior drug involvement as a factor supporting a subsequent search of a vehicle).

## CONCLUSION

For the foregoing reasons, the United States respectfully request that the Court deny the Defendant's motion to suppress evidence.

January 5, 2010                          Respectfully submitted,

                                         B. TODD JONES
                                         United States Attorney

                                         */S/ W. ANDERS FOLK*

                                         BY: W. ANDERS FOLK
                                         Assistant U.S. Attorney
                                         Attorney ID No. 311388

                                         */S/ William M. Narus*

                                         BY: WILLIAM M. NARUS
                                         Trial Attorney
                                         Department of Justice

                                         */S/ JEFFREY D. GROHARING*

                                         BY: JEFFREY D. GROHARING
                                         Trial Attorney
                                         Department of Justice

15