UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 09-292 (JMR/SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | GOVERNMENT'S SENTENCING |
| | ) | POSITION PAPER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABDOW MUNYE ABDOW, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys B. Todd Jones, United States Attorney for the District of Minnesota, W. Anders Folk, Assistant United States Attorney, and William M. Narus, Trial Attorney with the U.S. Department of Justice, hereby submits the Government's sentencing position paper.

**Based on the applicable Guidelines range and the factors of 18 U.S.C. § 3553(a), the Court should impose a sentence of 10-16 months imprisonment.**

**A.    Post-*Booker*, a district court should apply a three-step sentencing procedure.**

In the aftermath of Supreme Court's decision in *United States* v. *Booker*, 543 U.S. 220 (2005), the Eighth Circuit has held that district courts should follow the general sentencing procedures outlined by the Second Circuit in *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  *See United States v. Haack*, 403 F.3d 997, 1002 (8th Cir. 2005).  In *Crosby*, the Second Circuit explained that, as a result of the *Booker* decision, a district court must engage in a three-step sentencing procedure.

First, the court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. *United States* v. *Garcia*, 413 F.3d 201, 220 (2nd Cir. 2005). The Eighth Circuit has held that "we see nothing in *Booker* that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-*Booker*." *Haack*, 403 F.3d at 1003; *United States v. Garcia*, 413 F.3d 201, 220 (2nd Cir. 2005) ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*."). Moreover, "'the sentencing court [is] entitled to rely on any type of information known to it when determining an appropriate sentence.'" *United States* v. *Granik*, 386 F.3d 404, 414, n.7 (2nd Cir. 2004)(internal quotations and citation omitted).

The second step of the post-*Booker* sentencing process is for the district court to consider whether a departure from the Guidelines range is appropriate. *Haack,* 403 F.3d at 1002 (*citing Crosby*, 397 F.3d at 112).

Third, the sentencing court must consider the advisory Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. *Id.* at 1002; *see*

2

*Booker*, 543 U.S. at 245-46.  18 U.S.C. § 3553(a) provides that the "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) and then sets forth in pertinent part as follows:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)  the kinds of sentences available;
>
> (4)  the kinds of sentence and the sentencing range established for–
>
> (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
>
> . . . .
>
> (5)  any pertinent policy statement . . . issued by the Sentencing Commission . . . .
>
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

Although the Sentencing Guidelines are no longer mandatory, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *Booker*, 543 U.S. at 252. Thus, the Second Circuit has instructed district judges to consider the Guidelines "faithfully" in sentencing, *Crosby*, 397 F.3d at 114, and has held that the applicable Guidelines range is "a benchmark or a point of reference or departure" for a district court considering what sentence to impose on a defendant. *United States* v. *Rubenstein*, 403 F.3d 93, 99 (2nd Cir.), *cert. denied*, 126 S. Ct. 388 (2005). Likewise, the Eighth Circuit has stated that a district court's discretion in departing from the Guidelines' range is not unlimited: "[R]easonableness as constraint on a district court's discretion to depart downward infers a limited range of choice." *Haack*, 403 F.3d at 1004.

Because the Guidelines continue to represent a benchmark, in "the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable." *United States* v. *Fernandez*, 443 F.3d 19, 27 (2nd Cir. 2006). On appeal, "[s]entences within the Guidelines are presumptively reasonable." *United States v. Saddler, 538 F.3d 879, 890* (8th Cir. 2008)(quoting *United States v. Starr*, 533 F.3d 985, 1003 (8th Cir. 2008)). This is unsurprising, given that the Guidelines reflect the "accumulated wisdom and experience of the

4

Judicial Branch." *Mistretta* v. *United States*, 488 U.S. 361, 412 (1989).

**B.   The Pre-Sentence Report has correctly determined the applicable guideline range in this case.**

The United States has reviewed the presentence investigation report prepared by the Probation Office for the District of Minnesota. Based on this review, the United States submits that the presentence report has correctly determined that the applicable guideline range for the offense of conviction is 10-16 months. *See* Presentence Investigation Report, dated June 15, 2009, at ¶ 60. The United States believes that a downward departure or variance is inappropriate under the factors outlined in 18 U.S.C. § 3553(a).

**C.   A Sentence of 10-16 Months Imprisonment is Appropriate for Abdow's Obstruction of Justice.**

Turning to the factors contained in 18 U.S.C. § 3553(a)(1), it is clear that the defendant's actions justify a sentence within the contemplated Guidelines range.

> **1.   *The nature of the offense and the characteristics of the defendant make a sentence between 10-16 months appropriate.***

On October 8, 2009, the defendant obstructed a fast-moving F.B.I. and grand jury investigation into the disappearance of three men from Minnesota. At a time when the truth mattered the most, the defendant chose to lie. On October 8, 2009, the defendant was approached by agents from the F.B.I. while he was working at his job. (PSR ¶ 9.) After agreeing to speak to the agents, the

defendant repeatedly covered up information and lied about key facts. First, he covered up the true nature of the road trip he had just completed. The defendant told agents that he drove from Minnesota to Las Vegas and back. (PSR ¶ 9.) He told the F.B.I. agents that only he and his friend, "Adam," left Minnesota on the road trip to see Las Vegas. (Id.) The defendant further told agents that upon seeing Las Vegas, he and Adam simply turned their car around and drove back to Minnesota. Clearly, this was false. In fact, on October 5, 2009, the defendant drove with four other men from Minneapolis to San Diego, California. Their departure was planned in advance and over the course of two meetings, one at the defendant's home and another at a restaurant in Minneapolis. Upon driving from Minnesota to San Diego, the defendant dropped off three men at a hotel, while the defendant and Adam Ali returned to Minnesota with the rental car.

The defendant also lied to the F.B.I. agents about the identities of three of the individuals in his vehicle, telling the F.B.I. agents that no one else was with him and Adam Ali and that he did not know who rented the car he was driving. (Id.) While the defendant at one point told agents that "Adaki, Farhan and Farah," were in the vehicle with him, the defendant then recanted those statements. He told agents "I am talking too much," and after the defendant was asked multiple times, "who was with him in the car," he responded each time with "I don't know." The defendant knew well who was in his vehicle, knew that he drove them

6

cross-country from Minnesota to San Diego and knew that agents from the F.B.I. needed to know where he visited and the names and identities of the individuals with whom he traveled.

While the defendant may argue that he was scared by the presence of F.B.I. agents at his workplace and that he was not thinking clearly, such arguments provide no basis for any relief below the Guidelines range of 10-16 months at sentencing.

The circumstances of the defendant's interview clearly illustrate that the defendant's lies and obstruction cannot be explained away. First, the defendant took a break during the middle of his interview. Following that break in time, the defendant was again asked about the identities of individuals who were with him during the road trip, and thus given an opportunity to explain or clarify his previous false statements. The defendant instead chose to continue to obstruct the investigation by instead telling agents that he did not know who was in the car with him. Following this, the F.B.I. agents gave the defendant an opportunity to continue speaking with them when he got done working, instead, the defendant told agents, "I'll take my chances." The defendant continually and deliberately obstructed the agents' efforts to learn the truth regarding the departure of the defendant and other men from Minnesota through his lies.

While the defendant is seeking a variance based on his lack of criminal history and the fact that he has "bettered himself" by gaining an A.A. degree, neither fact provides justification for a

variance in this case. (*See* Def's Memorandum at 2.) Many defendants lead law-abiding lives until their crime(s) of conviction. The defendant's criminal history category of I appropriately reflects the defendant's lack of criminal history. That criminal history is already reflected in the contemplated Guidelines range of 10-16 months. No additional relief in the form of a variance is merited.

The defendant's education, while commendable, also does not provide the basis for a variance. If anything, it provides even less of an excuse for the defendant's criminal actions in this case. The defendant is an educated man who has been provided with the opportunities and benefits of growing up in Minnesota. He graduated high school, went on to pursue higher education and secured a job that provided him with stability and responsibility. Notwithstanding all of that, the defendant chose to cover for his friends and lie about their identities and activities to the F.B.I., obstructing justice in the process. As an educated person, the defendant was well-aware of what it means to tell the truth and what it means to deliberately lie and withhold information. The defendant, despite his education, chose to lie and to obstruct. No variance is appropriate based on this ground.

> 2. ***By appropriately reflecting the seriousness of obstructing justice, a sentence of 10-16 months also promotes deterrence, and imposes a reasonable and fair punishment in light of other similarly situated defendants.***

To deter other individuals who may contemplate taking a

similar path as the defendant, a sentence of 10-16 months is necessary. *See* 18 U.S.C. § 3553(a)(2)(B); *see, e.g., United States v. Garnette,* 474 F.3d 1057, 1061 (8th Cir. 2007)(the court found an upward variance necessary to protect the public and to deter others). The defendant deliberately lied to F.B.I. agents and obstructed a federal grand jury investigation. Effective law enforcement and the effective administration of justice depends upon, among other things, individuals providing timely and accurate information to law enforcement and the justice system when required. When one deliberately lies to agents and obstructs investigations into federal criminal offenses, it renders law enforcement less effective and the entire system of justice is hamstrung. To give the defendant a probationary sentence or to provide a sentence beneath the contemplated Guidelines sends the message that obstructing justice and lying to federal agents is not serious and is unworthy of punishment.

A Guidelines sentence of 10-16 months, however, makes clear that anyone contemplating lying to federal agents and obstructing justice will be punished. They will pay a price for taking actions to obstruct justice. A Guidelines sentence in this case makes clear that obstructing investigations by lying to federal agents is not an option or a "freebie." Rather, it sends a clear message, to the defendant and the public, that those who place loyalty to others ahead of their obligation to provide truthful information to the ensure the administration of justice do so at the cost to his or her freedom.

9

## Conclusion:

The United States respectfully requests that the Court sentence the defendant to a sentence of 10-16 months imprisonment.

Respectfully submitted,

B. TODD JONES
United States Attorney

*s/W. Anders Folk*

BY: W. ANDERS FOLK
Assistant U.S. Attorney
Attorney ID No. 311388

*s/W. Anders Folk*   for

WILLIAM M. NARUS
Trial Attorney
Department of Justice

10